Good morning. I am Morgan Gilhooly of Bard, Coffin, Lewis and Trapp, and I represent the appellant railroads. I'd like to reserve two minutes of my time for rebuttal. In this case, the railroads were held liable for diesel contamination. The railroads did not spill the diesel fuel. They did not own the land where the diesel was spilled. They had no It was spilled by oil companies that are not parties here, and which the agency sued, and from whom the agency recovered nearly $3 million. The district court applied a strict liability standard and held the railroads liable in nuisance. All of the district court's rulings hinged on its holding that the railroads were liable in nuisance. That holding was contrary to clear case authority in California, embodied in the Restatement Section 822. And the Restatement Section 822 states that a party may be held liable in nuisance on a showing of intentional and unreasonable conduct or tortious conduct. We have cited a number of cases that follow the Restatement, starting with Dufour and following with Lussier, which is extensively discussed in the briefs. Mr. Gilhooly, it looks as if you had to either have caused the nuisance, which, as you have said, is the case, to spill the contaminants onto the property, or you would have had to have assisted in the creation of the nuisance. And the theory of the district court seemed to be that by your knowledge of the placement of the French grain, that was sufficient to assist in the effectuation of the nuisance. That's what you claim was wrong, I take it. Well, the cause-or-assist language, Your Honor, I believe, is essentially describing a causation inquiry. It does not address the standard of conduct that has to be proved to show liability. That's right. And this is very evident in the Lussier. Well, you'll get to the cause question in a few minutes. I will. All right. The Lussier line of cases has also been followed in the federal district courts. West Coast and SPPI are two Judge Ilston decisions that have discussed this line of cases. And also the Walnut Creek Manor case, a Claudia Wilkin, Judge Wilkin decision. Applying that law, the district court's decision should clearly be reversed. The district court, as the Court has pointed out, did not discuss the Lussier line of cases, but instead applied a cause-or-assist standard from the City of Modesto case and other cases talking about essentially a causation inquiry. That is how remote from the causation of the nuisance may a party's conduct contribute to that nuisance. On the evidence that the railroad's conduct was tortuous or unreasonable, there was nothing in the record, nothing cited by the agency that indicates that any conduct that was unreasonable or tortuous by the railroads contributed to the contamination of the property or the French drain. So you take issue with a strict liability mens rea requirement. There is none. You oppose that. I oppose that. You say there has to be some mental element involved here. Well, and the standard's very clearly set forth in the restatement. It has to be intentional and unreasonable. And here, that could not be proven because the railroads did not intentionally cause a contamination of the French drain, and they had no knowledge of it. Wasn't their conduct with regard to the French drain intentional? The conduct with regard to the French drain was intentional, but it's not unreasonable. What conduct are we talking about? As I understand it, they approved a design that the state then paid and oversaw contractors to install. Correct. And then they had some continuing maintenance obligation, I assume, to keep the drains operating properly so they would remove water from underneath the roadbed. That's correct. And none of that conduct was unreasonable. They had no knowledge of the spill on the neighboring property. They had no knowledge that the spill had reached the French drain or areas 3, 4, and 24 to the properties at issue. Let me ask the question in a different way. Is the drains operated exactly as they were designed to operate, correct? Correct. I mean, they carried liquids away from the roadbed so that the roadbed didn't sink when the trains ran over them. Exactly. Okay. And so, as I understand the Redevelopment Agency's theory, the mere carriage of the contaminant through the French drains propagated the spill farther than it would have otherwise have flowed in the absence of the existence of the drains. That's the conduct they're trying, I guess, to tag you with. That's right. And keep in mind that at that time when the spill occurred, the district court found that the spill most likely occurred in 1974 on a neighboring property and flowed through this pipe at that time. At that time, the railroads did not own the land. They did not own the pipe. This was all owned by the state. They were operating railroads over the tracks, admittedly, but that conduct is not unreasonable or cautious. So is it your position as a matter of property law that, at best, they were exercising a right of easement as opposed to owning the property in fee? I think the best analysis of that, Your Honor, the state owned the property. There was a contract, as you will have seen, to transfer the property at some uncertain time in the future. I would say the best description of that is that they had a license. That is, they were permitted to use the land. The state owned fee title. It could have excluded the railroads at any time, and it obviously did not do so, but I would say that was a license. Let me talk about the effects of this decision a little bit. If, and the amicus parties have addressed this in their briefs, but this ruling, if it were California law, would affect a significant expansion of California nuisance law. It would make parties liable for reasonable behavior, and that is not something that the state has any interest in deterring. It would make, it would also vastly increase the number of parties that could be sued in nuisance. For, just to give an analogy here, if a tanker truck spilled gasoline in the street outside, and that gasoline ran into a storm drain and found its way to the ground, the city would be liable for that contamination under the district court's ruling. And the city, in that case, would be analogous to the state, because the state owned the land. Would the pipe maker be liable as well? I think the pipe maker would be liable. The architect who designed the road would be liable. That's the position that the railroads are in here, essentially. How about the company that installed it? Excuse me? How about the company that installed the drainage system? Would they be liable, too? I think they would be. Anybody that was a but-for cause under the district court's ruling would be a liable party. And as the district court says in its memorandum decision, that would have included the state, because the state owned the property, even though the state had done nothing tortious or unreasonable in this case. So our position, Your Honor, is that this decision is manifestly unfair and should be reversed. There would be drastic negative consequences if it were not reversed. The city has cited – excuse me, the agency has cited no case that considered the Lussier rule and rejected it, or the restatement rule and rejected it. The district court did not consider the Lussier standard or cite the restatement or any of the cases following it. I'd like to also address the water code prong of the Polanco Act. The district court held the railroads liable in nuisance, and based on that ruling, it also held them liable in trespass and also under the Polanco Act. And the Polanco Act, as it was described below, has two prongs of liability, a circler prong, and the district court held that there was no liability under the circler prong, and a water code prong. And the water code prong refers to Section 13304 of the Porter-Cologne Water Quality Control Act. The district court said liability under that statute is equivalent to nuisance, and it found the railroads liable under that statute. As I've already described, nuisance liability would not apply in this case, and therefore, the railroads should not be liable under Section 13304. But the court should also consider the cases interpreting the water code. Those cases have held that a party whose conduct is remote and passive from a discharge of waste is not a liable party. So your position, I'm looking at the language of California Water Code, Section 13304a. Your position is that there has to be some active causation even to be liable for permitting any waste to be discharged into the waters of the state. I think the permitting language, the In re County of San Diego decision by the state board holds that a landowner can be liable for a discharge of waste if it has knowledge of the discharge and an opportunity to prevent it. That, I think, goes directly to the permit issue, which is if you know about the discharge and you can prevent the harm, then you can be liable for permitting. That doesn't apply here because there was no knowledge and there was no opportunity to prevent. So your argument is that the conduct was at all times passive? Passive and remote. The In re County of San Diego case says that you need a knowledge of the discharge and an opportunity to prevent. That's the same language that the district court cited in its memorandum denying the agency's motion for a preliminary injunction. It's clearly the applicable law. But because the district court determined that Section 13304 has to be interpreted consistent with nuisance, it changed that holding when it got to summary judgment. Do you want to reserve some time? I'd like to reserve, yes. All right. Thank you very much. Great. We'll hear from the Redevelopment Agency of Stockton now. Mr. Brown? Good morning, Your Honors. William Brown on behalf of the Stockton Redevelopment Agency. I'd first like to start with refocusing the case on the Polanco Redevelopment Act. The gravamen of the complaint, the first cause of action, the majority of the opinion discusses the Polanco Redevelopment Act and not the law of nuisance. This is a statutory cause of action. It's unique to California. Its purpose is to aid redevelopment agencies in the elimination of blight and remove toxics from the environment. But doesn't it require something more than just passive existence? It requires something more than passive existence. It requires the standard under Water Code Section 13304. But those are verbs, creates and permits, are they not? Verbs connoting action. They are. And I believe that is the correct standard, is create or assist in the creation of a nuisance. What did the railroads do under your interpretation of Section 13304 that caused or permitted? They installed the French drain, which operated exactly as a French drain. They didn't install it. It was the state of California who installed it. They designed it. The court of a, the lower court. Did they design it or did they approve the design? There's a difference. They assisted in the design and the approval. It's in the records. They were assisted at every step of the way. I thought their testimony was if we had designed it, we would have, we would not have placed the French drains parallel to the railroad tracks. We would have put them perpendicular or some other direction. Your Honor, when you look at the maps that show that the drains are installed, they are signed off on by Cal, by both Caltrans and by the railroad. They were intended only for the benefit of the railroad. Prior to the hearing at the court below, the railroads had denied any knowledge of the. Let me come at it a different way. Is it the redevelopment agency's position that the drains were improperly installed, that they didn't work as they were supposed to work? No, they worked exactly as they were supposed to work. So in that regard, it's no different than any other landowner who has a wetlands problem and needs to remove water from underneath the soil. I disagree, Your Honor. I think that this is an affirmative act where they installed equipment that is meant to protect their property, that that equipment operated as it was intended to. This is different from Lucier and the cases that talk about failing. What bothers me about your position is the landowner here, whether it was the state of California or we buy your argument that there's some kind of equitable title, which frankly, as a matter of property law, I'm having a hard time understanding, but I'll grant you that for the sake of the argument. A landowner installs a drainage system that does exactly what drainage systems are supposed to do for a perfectly legitimate purpose, which is to make sure that the tracks don't sink under the weight of the trains when they're going over the road bed, but for the spill on the L&M land, which somehow managed to reach the French drains, the owner of the adjoining property did nothing to contribute to that spill other than having a fully functioning drainage system that did exactly what it's supposed to do, and in the absence of the spill would have worked just fine to everybody's benefit. That's true, Your Honor. The court below, though, did not ever address the issue of negligence. For example, was it negligent to install a French drain immediately next to a tank farm that had a history of repeated spills documented? You didn't argue that to the court, did you? We did not argue the issue of nuisance and negligence below. It was not addressed by the court below. I think you conceded in response to my earlier question that there's nothing improper in erecting a drainage system in order to remove water from underneath the road bed. If you construct it immediately adjacent to a huge above-ground storage tank farm that has had a repeated history of spills throughout this region, well-documented and known to the parties. Wasn't it the state who selected the route? They needed to move the rails out of the way of the Interstate 5 freeway exchange, and they picked this particular piece of property to run the bypass through. Your Honor, it's not clear who selected it. It appears that the state needed that property, and so the railroad lines had to be moved. But as to who selected the route and as to where it went, these were not matters that were addressed at the court below. Assuming that at some point the railroads might have serviced the bulk petroleum processing plant, wouldn't they need to be able to run rail lines into and out of the L&M property, or at least near the property? They may have, but they were not required to install a French drain in that area. In fact, the papers submitted by the railroad leading up to the hearing indicated it was not their habit to install French drains. What do they do in other areas where they've got moisture problems that are threatening the stability of the soil under the roadbed? I don't know, but the railroad's own testimony, it was not their habit to install French drains. Why they did it in this instance remains something. This was all done a long, long time ago. Your Honor, I'd like to address another fact, two of them that are unrelated. The Redevelopment Agency certainly had no fault in this matter. It is also an innocent party. One of the issues about why is environmental law moving closer to strict liability is because the Redevelopment Agency only has liability because of strict liability under environmental law. And so that is one of the things that should be pointed out, is that the Redevelopment Agency had absolutely no negligence, no profit, no nothing. This is a... So it's between two innocent landowners, who bears the burden? Isn't that what this case is all about? I mean, we're all looking for deep pockets here, because it costs a lot of money to clean up contaminated property. We understand that. And I think that leads me to my second point, Your Honor. Not only did the railroad install the French drains, but except for what is described in the appellate court, I mean, in the court below, very honestly is inexplicable, there's no reason why the railroad didn't record its title in 1968. Well, who had the responsibility to record? I read a contract that seems to indicate that it was the obligation of the state to do that. It says the state will convey the title to the railroad. And in the process of conveyance, don't we normally include filing it with the county recorder for San Joaquin County? Apparently what happened, Your Honor, is it was intended to be recorded after the completion of the railroad lines. The railroad lines were complete, the drain was installed, and the matter was never recorded. But all of the prerequisites to the recording, which is the railroad operating the site, the lines being installed, all of that was happening. And if the railroad had been acting as an owner at that time, which they did become owner later on, there is no doubt that the railroad, as an owner of the property, would share liability for the site in the same way that the redevelopment agency did. Are you now arguing that they are equitable owners of the property? Absolutely, Your Honor. How do you get around the California case law that says that if the property is not adequately described in the contract, which gives rights to equitable ownership, then it doesn't purport to convey an equitable interest in property, that at best what we have here is either an easement or a license? Your Honor, in the maps for where the installation of the railroad property would be, which were drawn up in 1968 and 1969, it was indicated where these railroad tracks would be. Those railroad tracks were installed in that exact same location. By 1969, this site was operating as it was intended to act as a railroad-owned property. The fact that the title was not recorded until later, I don't think this is clearly something that's described as an easement. If they had an easement under the California law, such as Campbell, they would not have liability. Even under California law, this is testing my memory of basic California real property law, but even under California law, they couldn't obtain title by adverse possession for seven years, right? Well, I must admit, Your Honor, if you're asking me, I don't know the answer.  I would have to say I would be guessing on the multistate at that point, Your Honor. But I do think, in all honesty, Your Honor, these people were operating the railroad tracks. They were the equitable owners. This is different from an easement. The only California cases that have addressed this are cases that discuss an easement and say an easement is not enough. Where somebody has an equitable interest, such as in this case, the people who were profiting from running the railroad and profiting from these tracks and profiting from the French drain were the railroad. The redevelopment agency never profited from any of this. Between two innocent landowners, it appears that the railroad should pick up at least some of the liability for this site. We weren't asking for every penny. It's subject to equitable apportionment and other issues such as that. If that's going to be the law, then why shouldn't we hold liable anybody who touches the property in any way, whether it's a state highway that runs across the land or a county road or, I don't know, the milkman who delivers the milk to a business on the land? Where do we draw the line? I think the line is in the two key words that the courts use, which are passive and remote. Liability cannot be passive and remote. Here the railroad's liability was not passive and remote. They installed the French drain. They designed it. They assisted in the installation. They operated the site. They profited from it. I think you'd have a much stronger argument with me if the railroad, if you had any evidence that the railroads knew that petroleum had reached the trench drains and was now running through the drains and did nothing. I think that would be a stronger case, Your Honor. We don't have those facts. But I don't think that makes it remote and passive. I think they were actively involved in the design. Let me ask the question a different way. How much more passive could you get if you have no knowledge and, therefore, no reason to take any action? I think the more remote things are the examples you gave before, such as a designer, et cetera. I also think when you look at the Lussier court, which is the court that the main case that they're relying on, that is a public entity that failed to remove debris from a watershed upstream, a natural condition. It appears that there is a very distinct line of thought in these cases that a man-made intrusion into property that it creates or assists in the creation of a nuisance is the type of invasion of property that should create liability. Especially between two innocent parties, the redevelopment agency is caught on the horns of strict liability as an owner of the site. The railroad, except for a technical glitch in not recording a document, even though they had operated and met all the prerequisites, gained use of the site, helped design the site. Their use of the site was not passive and remote. And they installed a facility, they installed a French drain that spread the oil contamination. Another example, if the pollution had just leaked over from the adjoining property and there was no French drain which had collected it and dispersed it to the property, then I think that would be a remote use of the site. Suppose that instead of a trench drain, the railroad had decided to put pea gravel underneath the roadbed. And because it's relatively porous and water would flow through it, having used pea gravel, it would make the water laced with petroleum disperse further than if they had used clay. Would your position be that they would be liable for that reason alone? I don't think so, Your Honor. I think that's a seepage case. I think this is different. This is discharge from a pipe in a facility that was meant to do that. And the resulting damage was far greater. But we normally think of discharge cases involving pipes as a pipe that's created in order to carry industrial waste away from, let's say, a plant. And in the process, they discharge the waste into a navigable waterway. That's a more typical kind of a discharge. Here, this pipe was not designed to discharge contaminants. It was designed to relieve water, which was making the roadbed unstable. And I'm having a hard time finding anything malicious about installing a drainage system. I don't think it's malicious, Your Honor. I think it's between two innocent parties in terms of intent. Should one bear the entire burden, which is a redevelopment agency serving a public purpose, or should it be a party that designed a facility that did transport the chemicals? But is that a determination for the legislature to make? I mean, we've got language in the statute that says creates or permits, which sounds active to me. If the redevelopment agency's position is the true state of California law, why don't they go back to the legislature and ask to amend these statutes to make it clear that these are strict liability offenses? Well, Your Honor, the other argument can also be made that the statutes do not require strict liability, that these statutes are very ñ does not require negligence. There is nothing in the Polanco Redevelopment Act that discusses negligence. There's nothing in Water Code Section 13304. And going back to your point about pipes, as an environmental attorney who represents public agencies, I'm afraid to tell you that public agencies typically have responsibility for pipes that discharge nothing but stormwater, which is not intended to do anything except move stormwater. But if it has traces of contaminants, public entities and everybody else under Water Section 13304 ñ But don't those cases usually involve knowledge on the part of the owner of the stormwater system that there are contaminants in the water? I think all it's saying is that everybody would know that there is the possibility that there would be contaminants in stormwater. Everybody is also aware that contaminants can be moved through a French drain. The level that ñ the public entities are being hit both ways, Your Honor. We're responsible for discharge from our pipes when it's unintentional and that we have no malice or intent for. But when we pick up stormwater, we're responsible for those types of actions under Water Code Section 13304. A public entity that a private party that has designed and implemented a French drain, which, by the way, is the most efficient spreader of pollution of all time, is being held not liable. And I think that's an inequitable result. Any other questions? Thank you, counsel. Your time has expired. Unless the Court has questions, I just have two very brief statements. First, the RDA, the agency, excuse me, sued the parties that spilled the petroleum and recovered approximately $3 million. So they're not in the same position as the railroads. And secondly, there was a case that was decided in January on the nuisance statute of limitations issue. That was Harris v. Gregory, 2011, Westlaw 140185, January 18, 2011, California Appellate Court. Counsel, have you filled out one of those slips from the clerk so that you can supply citations? Yes, I will do that. We'll take a look at it. It cites the Renz case and the Baker case, which are discussed in the briefs, and does not reconcile the conflict between them. Very well. The case just argued is submitted. Thank you, both counsel, for your argument.
judges: Thompson, Tallman, Cjj Tarnow (E. Michigan), Dj